IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KELLY ELAINE SLAYTON,<br>SPN #03078865,<br>*Plaintiff*<br><br>vs.<br><br>JAYNEQUKIA LAWRENCE<br><br>*Defendant.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 4:22-2572 |

**FIRST AMENDED COMPLAINT**

COMES NOW Kelly Elaine Slayton ("Ms. Slayton") and files this lawsuit against Defendant Detention Officer Jaynequkia Lawrence ("Officer Lawrence") in her individual capacity, stating as follows:

**STATEMENT OF CASE**

1. Harris County Jail ("the Jail") is a large pretrial detention facility that, for years, has operated under conditions that are dangerous, degrading, and constitutionally intolerable. Pretrial detainees housed at the Jail are routinely exposed to unchecked violence, inadequate supervision, and systemic failures in medical and mental health care. Overcrowding, chronic understaffing, and a lack of meaningful accountability have created an environment in which detainees face a constant risk of serious harm, assault, and medical neglect. Rather than serving its intended purpose as a temporary custodial facility, the Jail functions as a place of punishment, fear, and suffering.

2. These conditions are not isolated, accidental, or unforeseeable. Detainees

are subjected to excessive force, denied timely medical care, and left unprotected from violence by both Jail staff and other detainees. Despite repeated warnings, reports, and well-documented incidents of injury and death, reasonable measures have not been taken to remedy these conditions. As a result, Harris County Jail continues to operate in a manner that violates basic standards of decency and the constitutional rights of those confined within its walls.

3. Harris County Jail is widely known to be dangerously overcrowded, understaffed, and incapable of protecting detainees or providing timely medical care. By early 2022, public reporting, litigation, and state oversight had already identified a pattern of detainee-on-detainee assaults, unchecked officer misconduct, and prolonged delays in medical treatment. These conditions were not hidden or isolated; they were chronic, escalating, and known to Harris County and the Sheriff's Office.

4. In the months leading up to June 2022, the Jail experienced a surge in assaults, with detainees facing an elevated risk of being attacked by other detainees due to overcrowding and inadequate supervision. Reports during this period documented that detainees at the Jail faced approximately a one-in-ten chance of being assaulted by another detainee or staff member. These assaults frequently occurred in housing units where Officers failed to conduct proper rounds or intervene until after violence had already occurred.

5. Ms. Slayton has been confined in the Harris County Jail for five years, during which time, multiple Detention Officers and detainees have verbally, physically, and sexually assaulted her. Ms. Slayton reported this abuse through appropriate channels;

however, the proper precautions were not taken. Instead of Ms. Slayton being provided with medical care in a timely fashion and protected from future abuse, she was retaliated against and further victimized.

6. Ms. Slayton suffers from serious mental health conditions, dating back to when she was a young child. Ms. Slayton suffers from PTSD, psychosis, bipolar disorder, and borderline personality disorder. Her mental health worsens when she is denied medication and other medical care, leaving her in a vulnerable state in a very dangerous place. Ms. Slayton grew up in foster care and was victimized throughout her childhood. This traumatizing upbringing along with her health challenges resulted in Ms. Slayton getting into trouble in her youth and made her even more susceptible to being victimized later in life.

7. As a result of Ms. Slayton being verbally, physically, and sexually harassed, confined unconstitutionally and not given adequate medical attention, by Officers, while in Harris County Jail custody, she continues to live in fear of her safety and suffer from mental and emotional distress.

8. Ms. Slayton's rights were violated when Officer Lawrence failed to provide adequate medical care after Ms. Slayton was viciously attacked by a mob of detainees. Officer Lawrence's conduct was objectionably unreasonable and showed a deliberate indifference to Ms. Slayton's rights because Officer Lawrence failed to render medical aid in a timely fashion, resulting in several physical and mental injuries from the attack by other detainees. Officer Lawrence did not only deny Ms. Slayton medical care Ms. Slayton desperately needed, but she failed to protect Ms. Slayton by threatening Ms. Slayton's life and allowing another inmate to do the same.

9. Dating back to June 2022 and before, housing units at the Jail were routinely staffed below minimum levels, forcing Officers to monitor multiple pods simultaneously or remain stationed at pickets without conducting face-to-face checks. As a result, detainees were frequently left unsupervised for extended periods, creating predictable opportunities for coordinated attacks, including assaults during sleeping hours. This lack of supervision directly contributed to Ms. Slayton being assaulted while asleep, without timely intervention, and being assaulted while in her holding cell awaiting medical treatment.

10. By the end of 2022, at least twenty-eight people had died in Harris County Jail custody, making it one of the deadliest jails in the country that year. Many of those deaths occurred during the same year and under the same staffing, medical, and supervisory conditions as Ms. Slayton's assault, in June 2022. These deaths were widely attributed to violence, medical neglect, and failures to respond to obvious medical emergencies.

11. In and around June 2022, detainees who requested medical care routinely experienced hours-long or days-long delays before being seen, if they were seen at all. Holding cells and temporary confinement areas were commonly used as de facto medical holding areas despite lacking medical staff, equipment, or monitoring. Detainees with visible injuries were frequently told to wait, ignored, or threatened for continuing to request assistance.

12. In the months following June 2022, violence, deaths, and medical neglect at the Harris County Jail continued to increase. State inspectors later confirmed that the Jail remained out of compliance with minimum standards related to staffing, medical care,

and detainee supervision. These findings confirm that the conditions Ms. Slayton endured were not anomalies, but part of an ongoing collapse in jail operations.

13. At all relevant times, Officer Lawrence knew or should have known that detainees faced a substantial risk of serious harm due to understaffing, overcrowding, and inadequate medical systems. Public reports, prior lawsuits, state oversight, and the sheer volume of assaults and deaths placed Officer Lawrence on notice that failure to act would result in serious injury or death to detainees like Ms. Slayton.

14. Accordingly, Ms. Slayton seeks judgment against Officer Lawrence, in her individual capacity, for violations of Ms. Slayton's Constitutional rights to receive adequate medical care under the Fourteenth Amendment (Count I); and for the failure to protect under the Fourteenth Amendment (Count II) cognizable pursuant to 42 U.S.C. § 1983.

## JURISDICTION AND VENUE

15. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 because Ms. Slayton is asserting a cause of action that arises under a federal statute.

16. Venue is proper in the United States District Court for the Southern District of Texas, Houston Division pursuant to 28 U.S.C. § 1391(b) (1) because Officer Lawrence's principal offices are located in the Southern District of Texas, Houston Division. Venue is also proper in this district and division pursuant to 28 U.S.C. § 1391(b) (2) because a substantial part of the acts or omissions giving rise to the claim occurred within the district.

## PARTIES

17. Plaintiff Kelly Elaine Slayton ("Ms. Slayton") is and was at all times

relevant herein a citizen of the United States of America and a resident of the State of Texas.

18. On information and belief, Defendant Detention Officer Jaynequkia Lawrence ("Officer Lawrence") is and was at all times relevant hereto a citizen of the United States and an Officer employed by Harris County who worked within the Jail. At all times relevant hereto, Officer Lawrence was acting under color of state law and authority of her position with Harris County when she deprived Ms. Slayton of her constitutionally protected rights proximately causing Ms. Slayton's injuries. For purposes of Ms. Slayton's federal claims, Officer Lawrence is named in her individual capacity.

## ALLEGATIONS COMMON TO ALL COUNTS

19. On January 8, 2021, Ms. Slayton was arrested and booked into the Harris County Jail and its staff at the Harris County Jail were aware Ms. Slayton was suspected of suffering from mental illness.

20. Detention Officer Lawrence violated Ms. Slayton's civil rights by failing to provide medical care and failing to protect Ms. Slayton, under the Fourteenth Amendment.

21. On June 11, 2022, around 4:00 A.M., a mob of six detainees viciously attacked Ms. Slayton in pod 4A. The detainees ruthlessly pulled Ms. Slayton off the top bunk, resulting in her hitting her head on the bunk across from hers followed by hitting her head on the concrete floor. The detainees began savagely striking Ms. Slayton in the head with balled up fists and kicking her, in the head and all over her body. Ms. Slayton attempted to shield her head from the blows, but eventually blacked out. Upon regaining consciousness Ms. Slayton went to the camera window, which at this point had blood splatter on it, and called for help.

22. The Officer(s) refused to turn the lights on and told Ms. Slayton to go back to her cell like nothing happened. As a result of the assault, Ms. Slayton suffered visible injuries, including bruising on her feet, arms, and face. Ms. Slayton struck her head on a bunk and then the floor during the assault and covered her head while being struck. Ms. Slayton believed she might die due to the severity of the beating. The assault was described as “violent” in an incident report written by Detention Officer Ivan Fabian.

23. After the assault, Ms. Slayton ran from the pod in a state of distress and banged on the door until officers turned on the lights. Male officers responded and summoned roving officers. Ms. Slayton was moved to a holding cell as she awaited medical attention she desperately needed.

24. Another inmate in the holding cell, Faith Marie Stafford (“Stafford”), told Ms. Slayton, where Officers could hear, that she would kill Ms. Slayton for being white and “breathing in her presence.” Stafford continuously spit on Ms. Slayton while they were in the holding cell together. Ms. Slayton tried to get the Officers’ attention by hitting the speaker and a window, but the Officers ignored her. Even after Ms. Slayton had been visibly injured and removed from her housing unit, Officer Lawrence failed to protect her from further harm by Stafford.

25. Rather than separating Ms. Slayton or ensuring her safety, Officers dismissed her concerns and refused to take protective action, demonstrating deliberate indifference to an ongoing and known risk. Officer Lawrence even went as far as to tell Ms. Slayton that if another inmate did not kill her, she and another Officer would kill her themselves.

26. Officer Lawrence threatened Ms. Slayton because Ms. Slayton is white, thereby discriminating against her based on race. Ms. Slayton was discriminated against based on race and challenges she suffered with from her mental health, on multiple occasions while in custody. Officer Lawrence also had knowledge other detainees intended to harm Ms. Slayton. During this same period, detainees reported being subjected to racially hostile language, threats, and intimidation by Officers.

27. Such conduct was consistent with a broader culture in which Officers used threats of violence, segregation, or medical denial to silence detainees. Ms. Slayton's experience of being threatened while injured and seeking help occurred within this broader atmosphere of coercion and abuse. The nature of the physical threats against Ms. Slayton, taken together with Ms. Slayton's mental and emotional vulnerability, caused Ms. Slayton to face a substantial risk of harm. Officer Lawerence consciously disregarded that risk, as evidenced by her words and lack of action.

28. Ms. Slayton sustained significant physical injuries, including blunt force head trauma, an untreated concussion, widespread bodily pain, lacerations, bruises, persistent migraines lasting several days, episodes of dizziness, seizures, and fatigue. These injuries were further exacerbated by the fact that Ms. Slayton did not receive proper medical treatment until over a week after the altercation. Officer Lawrence knew Ms. Slayton was injured. Officer Lawrence's disregard of the injuries and Ms. Slayton's requests for medical attention, even though it was obvious she needed medical assistance, amounts to deliberate indifference. As a direct and proximate result of Officer Lawrence's deliberate indifference, Ms. Slayton suffered physical pain, mental anguish, and severe emotional distress.

29. The Jail's disciplinary panel later recognized that Ms. Slayton had clearly been assaulted and waiving disciplinary action against her, but this acknowledgment came only after the harm had already occurred. The Jail's inability to prevent the assault, intervene during the attack, or provide prompt medical care afterward demonstrates a systemic failure that an after-the-fact disciplinary proceeding could not cure. Due to the unconstitutional conditions Ms. Slayton endured while incarcerated, Ms. Slayton attempted to take her own life while incarcerated. The circumstances described above demonstrate that Officer Lawrence's actions were reckless and/or callously indifferent to Ms. Slayton's rights.

30. After Officer Lawrence intentionally denied Ms. Slayton medical care, she harassed Ms. Slayton on several occasions. In late 2022, Officer Lawrence told several African American detainees that Ms. Slayton was racist, in an apparent attempt to provoke racially motivated violence against Ms. Slayton by other detainees. The Seargent attempted to intervene to get Officer Lawrence to stop. Officer Lawrence became irate, verbally aggressive and almost assaulted Ms. Slayton. A Seargent eventually made Officer Lawrence leave the pod.

31. In another incident when Ms. Slayton was forced to seek medical care, Officer Lawrence stepped on the back of Ms. Slayton's heels and violently pushed her down the hallway and threatened her by saying, "What are you going to do, grieve me again." Officer Lawrence continued to harass Ms. Slayton in several other incidents. These incidents are but a few of the dozens of times Ms. Slayton was attacked at Harris County Jail, demonstrating these were not isolated instances of inadequate or neglectful supervision.

32. As far back as 2018, the Texas Commission on Jail Standards determined Harris County Jail has repeatedly failed to meet the minimum standards regarding supervision and health and safety. Numerous minimum standards regarding supervision, including the failure to conduct required face-to-face inmate observations, failure to properly identify and communicate suicide/mental-health risk, chronic late observation rounds and inadequate staffing, delayed medical/mental-health care, observation lapses and insufficient staffing were repeatedly not met.

33. Regarding supervision, in November 2021, Texas Commission on Jail Standards noted inadequate staffing may have "possibly contributed to increased inmate-on-inmate assaults."

34. Ms. Slayton repeatedly attempted to report assaults, medical neglect, retaliation, and staff misconduct through the Harris County Jail grievance system, including the kiosk-based process. Grievance receipts and records show that grievances were received, investigated, and frequently marked "unfounded" or "founded/resolved," even where serious harm was alleged. Some grievances were appealed, while others were dismissed for alleged procedural defects, such as failure to appeal within five days.

35. Officers retaliated against Ms. Slayton for filing grievances, mocked her grievances publicly, muted intercoms when she attempted to report issues, and used threats to discourage further complaints. Grievances were deleted or lost due to kiosk malfunctions or system limits, preventing full exhaustion of remedies. Despite filing numerous grievances and appeals, Officer behavior did not change, and Ms. Slayton continued to receive lackluster protection and lengthy delays in medical care. Instead,

similar conduct recurred, including further assaults, threats, and medical neglect.

36. The Harris County Jail grievance and vestibule processes function primarily as paper compliance mechanisms, not as tools for meaningful accountability or reform. Grievances are frequently dismissed as unfounded, procedurally barred, or "resolved" without corrective action. Technical failures in the kiosk system, strict appeal deadlines, and the lack of independent investigation combine to prevent meaningful redress. Even when grievances relate to serious constitutional violations, Officers are not disciplined, policies are not changed, and the same conduct continues. The culture reflected in these documents shows that abuse, neglect, and retaliation are tolerated as "just how it is," reinforcing a system where filing grievances exposes detainees to further harm rather than protection.

37. Ms. Slayton filed hundreds of grievances for several different incidents that occurred during her detention. She filed grievances in the kiosk and using the vestibule in the hallway. Both systems are rife with systemic errors that make it close to impossible for detainees to have issues resolved utilizing the only system that they have access to. Ms. Slayton filed numerous grievances to document that kiosk requests were closed without meaningful investigation, marked "unfounded" despite unresolved conditions, or answered with boilerplate language that did not address the substance of the complaint. There were repeated instances where detainees including Ms. Slayton were limited to one kiosk request per day, even when multiple urgent issues existed, preventing timely reporting of ongoing harm.

38. Additionally, grievances show that responses were often delayed beyond

stated timelines, returned without receipts, or required signatures from detainees who lacked access to eyeglasses or assistance to read what they were signing. The kiosk system is dependent on staff discretion at multiple stages, creating opportunities for grievances to be screened, minimized, or reframed as non-grievable issues, particularly when complaints involved staff misconduct, medical neglect, or retaliation. This resulted in a pattern where repeated grievances about the same conditions were cycled through the system without correction, effectively exhausting administrative remedies without providing relief.

39. The even less reliable vestibule grievance box is documented as an alternative method for submitting written grievances, particularly when kiosk access is unavailable, malfunctioning, or when grievances involve sensitive issues such as Prison Rape Elimination Act ("PREA") allegations or staff misconduct.

40. Ms. Slayton submitted multiple grievances and appeals documenting that written grievances placed in the vestibule box were later reported as missing, delayed, or never logged into the system. In some instances, detainees were told a grievance could not be located or that no record existed, requiring the detainee to re-file and restart deadlines. Ms. Slayton reported multiple Constitutional violations including sexual assaults and harassment, use of excessive force, denial and delay of medical care and treatment, inhumane living conditions and access to hygiene products, to name a few.

41. Rampant problems were tied to lack of maintenance and functionality of the grievance system, including broken kiosks that forced reliance on the vestibule box, poor tracking of paper grievances, and inconsistent collection schedules. Unlike the kiosk

system, the vestibule process provides no immediate confirmation or grievance number, leaving detainees unable to prove submission. This lack of accountability is compounded by staffing shortages, inconsistent supervision, and reliance on manual handling of sensitive complaints.

42. Grievances involving serious allegations such as medical neglect, mail tampering, retaliation, or PREA concerns were especially vulnerable to being lost, downgraded, or delayed when submitted through the vestibule box, undermining the effectiveness of the administrative remedy process and contributing to systemic failure rather than resolution.

43. Ms. Slayton is entitled to compensation for violations of Ms. Slayton's constitutional rights that Officer Lawrence knowingly and unlawfully inflicted upon her, including, but not limited to, all damages allowable for pain and suffering, physical and mental anguish and emotional distress; attorney's fees; and punitive damages.

## COUNT I

**Failure to Provide Adequate Medical Care in violation of the Fourteenth Amendment to the U.S. Constitution, Cognizable Under 42 U.S.C. § 1983**

44. Officer Lawrence violated Ms. Slayton's Fourteenth Amendment right to medical care while Ms. Slayton was detained at Harris County Jail.

45. Ms. Slayton was denied medical attention for 10 days, after she was brutally attacked by a mob of 6 detainees.

46. On June 11, 2022, around 4:00A.M. Ms. Slayton was viciously attacked, resulting in her blacking out, bruises, bleeding, and leaving her in severe pain for days.

47. After banging on the door to be separated from her assailants, she was moved from the pod to a holding cell.

48. Officer Lawrence was working as a rover and the picket FCC.

49. While in the holding cell, Ms. Slayton, who was still in significant pain repeatedly asked Officer Lawrence to take her to medical.

50. While in the holding cell, another inmate, Ms. Stafford, continuously spit on Ms. Slayton and threatened to beat her.

51. Ms. Slayton was knocking on the window and hitting the button because she wanted to be taken to medical and she was afraid of Ms. Stafford.

52. Instead of taking her to medical, Officer Lawrence harassed Ms. Slayton by telling her "If you don't shut up and sit down, I'll put you in the hospital."

53. Officer Lawrence also said, "If these inmates don't kill you, we will" and "I hate your kind" referring to Ms. Slayton's race as being white, and Officer Lawrence as being African American.

54. There was a male rover present when Officer Lawrence made these comments to Ms. Slayton.

55. Ms. Slayton hereby incorporates by reference the allegations made in each preceding paragraph as if each were set forth herein.

56. Ms. Slayton's mental health and physical injuries including bruises from head to toe and bleeding from her head were objectively serious health conditions and

symptoms recognized by Harris County Jail.

57. Ms. Slayton was experiencing objectively serious health conditions and symptoms while incarcerated.

58. Officer Lawrence's denial of appropriate medical care for Ms. Slayton's objectively serious health conditions and symptoms demonstrates deliberate indifference towards Ms. Slayton's condition in violation of Ms. Slayton's Fourteenth Amendment rights secured by the United States Constitution, cognizable under 42 U.S.C § 1983.

59. Officer Lawrence should have been aware that denying Ms. Slayton adequate medical care for her serious medical needs constituted a denial of Ms. Slayton's basic human needs and constitutional rights.

60. In committing the acts alleged herein, Officer Lawrence acted willfully, recklessly, maliciously, and with deliberate indifference to Ms. Slayton and her serious medical needs and need for medical care.

61. These acts are just a handful of several incidents that happened to Ms. Slayton and other detainees at Harris County Jail.

62. A system wide problem exists at Harris County Jail, rife with pervasive sadistic acts from Officers, sometimes teaming up with other Officers or with other detainees, to violate the constitutional rights of Ms. Slayton and other detainees.

63. Officer Lawrence was acting under color of State law when she denied Ms. Slayton her Constitutional right to adequate medical care in violation of Ms. Slayton's

Fourteenth Amendment rights secured by the U.S. Constitution.

64. As a direct and proximate result of the acts and omissions of Officer Lawrence, while acting alone and/or in concert with others and with deliberate indifference to Ms. Slayton's rights and serious medical needs, Ms. Slayton suffered severe and devastating damages and injuries, including but not limited to intense physical pain, the inability to get requested relief or assistance, suffering, fear, mental anguish, vomiting, headaches that lasted days, and other serious and unnecessary medical challenges.

65. The conduct of Officer Lawrence, as alleged herein, was wanton, willful, undertaken with evil motives, and/or displayed a deliberate indifference to Ms. Slayton's constitutional rights, privileges and immunities, thereby justifying an award of punitive damages against Officer Lawrence, in her individual capacity, in an amount sufficient to punish and deter Officer Lawrence and others from engaging in like misconduct in the future.

66. As a result of Officer Lawrence's knowingly unlawful actions and infringements of Ms. Slayton's protected rights, Ms. Slayton has been compelled to retain counsel in this matter and is therefore entitled to a recovery of attorney's fees and legal costs pursuant to 42 U.S.C. § 1988.

**COUNT II**

**Failure to Protect in violation of the Fourteenth Amendment to the U.S. Constitution, Cognizable Under 42 U.S.C. § 1983**

67. Ms. Slayton hereby incorporates by reference the allegations made in each

preceding paragraph as if each were set forth herein.

68. Officer Lawrence knew of and disregarded a substantial risk to Ms. Slayton's health and safety by failing to intervene when Ms. Slayton was assaulted by Ms. Stafford while under Officer Lawrence's custody and supervision, and by threatening Ms. Slayton's life herself.

69. Officer Lawrence knew Ms. Stafford was spitting on and threatening Ms. Slayton, but she refused to intervene or to protect Ms. Slayton from Ms. Stafford.

70. Officer Lawrence was told of the assault that Ms. Slayton suffered and subjectively knew of the risk to Ms. Slayton and also of the harm Ms. Slayton experienced.

71. A reasonable Officer knowing of the assault also would have been aware of this risk and harm by hearing of it, and would not have further exacerbated the incident by threatening the victim, Ms. Slayton's, life.

72. By failing to intervene, Officer Lawrence acted with deliberate indifference to Ms. Slayton's health and safety and did not take reasonable measures to abate the risk and harm Ms. Slayton suffered.

73. As a result, Officer Lawrence's actions were the direct and proximate cause of the violations of Ms. Slayton's constitutional rights and the damages she suffered, including mental and physical pain and suffering, emotional distress, and other economic and non-economic losses in an amount to be proven at trial.

74. WHEREFORE, Ms. Slayton, respectfully prays that this Honorable Court

enter judgment in her favor for compensatory and punitive damages; award her reasonable costs and attorneys' fees; and grant her any and all such other relief as this Court deems just and proper.

## **INJURIES AND DAMAGES**

75. Ms. Slayton hereby incorporates by reference all the allegations made in each preceding paragraph as if each were set forth herein.

76. As a direct and proximate result of the deliberately indifferent actions of Officer Lawrence which were in furtherance of the pervasive and rampant disregard for human life that is the culture in Harris County Jail, Ms. Slayton suffered personal injury including head, neck and back trauma, pain and suffering, extreme fatigue, dizziness, and mental anguish. As a direct result of the deliberately indifferent actions of Officer Lawrence, Ms. Slayton suffered and continues to suffer a poor quality of life in confinement. Officer Lawrence's negligence and deliberate indifference directly contributed to the personal injury, pain and suffering, and mental anguish experienced by Ms. Slayton.

77. Ms. Slayton is entitled to recover punitive damages from Officer Lawrence for her intentional, willful, and malicious acts and/or omissions which constituted gross negligence, recklessness, and deliberate indifference to Ms. Slayton's medical needs in violation of the civil rights pursuant to 42 U.S.C. § 1983.

## **DEMAND FOR JURY TRIAL**

Ms. Slayton hereby demands trial by jury on all of the above issues, costs herein incurred, fees where appropriate, and such relief as is deemed appropriate by the Court.

Dated: April 21, 2026

Respectfully submitted,

SHOOK, HARDY & BACON L.L.P.

By: */s/ Megan J. Mitchell*

Megan J. Mitchell
Texas Bar No. 24121017
John Lewis, Jr.
Texas Bar No. 24108103
Michael Harrison
Texas Bar No. 24092491
600 Travis Street, Suite 3400
Houston, TX 77002
Telephone: 713.227.8008
Facsimile: 713.227.9508
mjmitchell@shb.com
jolewis@shb.com
mharrison@shb.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 21, 2026, the foregoing was filed and served upon counsel of record via upload to the Court's **CM/ECF System**.

*/s/ Megan J. Mitchell*
Megan J. Mitchell